CHELSEA AMANDA BROOKE COBB BY AND THROUGH D. RODNEY KNIGHT, JR.,
HER GUARDIAN AD LITEM, AND ROBERT B. COBB, FATHER OF PLAINTIFF,
INDIVIDUALLY, Plaintiffs v. TOWN OF BLOWING ROCK, A MUNICIPAL
CORPORATION, AND CITY OF BLOWING ROCK, A MUNICIPAL CORPORATION,
Defendants

No. COA09-1443

(Filed 5 July 2011)

**1. Premises Liability— jury instructions—landowner's duty
to minor—requested instruction incorrect—no error**

The trial court did not err in a negligence case by failing to
give plaintiffs' requested jury instructions regarding a landowner's
duty to a minor who is a lawful visitor as the instructions con-
tained an incorrect statement of law.

**2. Premises Liability— jury instructions—known or reasonably
foreseeable characteristics of lawful visitors—failure to
instruct—erroneous**

The trial court erred in a negligence case by failing to instruct
the jury to consider the known or reasonably foreseeable charac-
teristics of lawful visitors when determining whether defendant
had discharged its duty to exercise reasonable care in maintaining
its property for the protection of plaintiff.

**3. Premises Liability— jury instructions—known or reasonably
foreseeable characteristics of lawful visitors—denial of motion
for new trial—erroneous**

The trial court erred in a negligence case by denying plain-
tiffs' motion for a new trial. The trial court failed to instruct the
jury to consider the known or reasonably foreseeable character-
istics of lawful visitors when determining whether defendant dis-
charged its duty to exercise reasonable care in maintaining its
property for the protection of plaintiff.

Appeal by Plaintiffs from judgment entered 17 October 2008 and an
order entered 30 March 2009 by Judge Anderson D. Cromer in Superior
Court, Watauga County. Heard in the Court of Appeals 12 May 2010.

*Brown Moore & Associates, PLLC, by R. Kent Brown, for
Plaintiffs-appellants.*

*Clawson & Staubes, PLLC, by Andrew J. Santaniello and Michael
J. Kitson, for Defendant-appellee.*

*Poisson, Poisson & Bower, PLLC, by E. Stewart Poisson, and Goldsmith, Goldsmith & Dews, P.A., by Frank Goldsmith, for amicus curiae North Carolina Advocates for Justice.*

*Cranfil Sumner & Hartzog LLP, by Kari R. Johnson, for amicus curiae NC Association of Defense Attorneys.*

HUNTER, JR., Robert N., Judge.

This case requires us to determine whether, in a negligence case, the jury must be instructed to consider the known or reasonably foreseeable characteristics of lawful visitors when the plaintiff, who is a lawful visitor, is injured by a natural condition on the defendant's property. We hold the failure to give such an instruction is error. Therefore, we award Plaintiffs a new trial.

## I. Factual and Procedural Background

On 28 August 2007, Chelsea Amanda Brooke Cobb, through her guardian *ad litem* D. Rodney Knight, Jr., and Chelsea's father, Robert B. Cobb, individually, (collectively referred to as "Plaintiffs"[1]) filed a complaint against the Town of Blowing Rock[2] ("Defendant") alleging negligence. On 18 October 2007, Defendant filed an answer and a motion to dismiss pursuant to North Carolina Rules of Civil Procedure 12(b)(4) and (5). Evidence presented at trial tended to show that, on 9 August 2004, Ms. Cobb, age twelve, and a friend were playing in the area around Glen Burney Falls on New Years Creek, which is located on property owned by Defendant. Glen Burney Falls is the second of three waterfalls located on Defendant's property on New Years Creek, a naturally occurring stream whose depth varies according to season and rainfall, from barely covering the creek bed to several feet deep after a storm. Just above Glen Burney Falls, the creek is around ten to twelve feet wide. Defendant opened the property to the public for recreational activity and for viewing the three waterfalls located on the property. In doing so, Defendant constructed and maintained designated trails and platforms to view the waterfalls, including a wooden observation deck upstream from Glen

---

1. D. Rodney Knight, Jr. was listed as the guardian *ad litem* at the time of the judgment dismissing Plaintiff's case with prejudice. Andrea N. Capua was listed as the guardian *ad litem* at the time of the order denying Plaintiffs' motion for a new trial..

2. Plaintiffs also filed against the "City of Blowing Rock." However, Defendant denied there was a "City" and again on appeal states that "there is no, 'City of Blowing Rock' and this matter has proceeded against the Town of Blowing Rock." Therefore, we refer to Defendant in the singular.

Burney Falls. On 9 August 2004, Ms. Cobb and her friend went to the overlook platform at Glen Burney Falls. Instead of staying on the designated trail, they exited the left side of the platform and attempted to cross New Years Creek just above Glen Burney Falls. However, Ms. Cobb slipped in the creek, began sliding downstream, and went over the waterfall. As a result, she suffered serious injuries.

There were no warnings located on the overlook platform or the trail regarding the dangers of trying to cross New Years Creek or of leaving the platform. At the beginning of the Glen Burney trail, the hiking trail that leads to the waterfalls, there was a sign with a map of the trails that warned visitors not to leave the designated marked trails. A cable had been extended between two trees across New Years Creek just above Glen Burney Falls at some time in the past, but prior to 9 August 2004, the cable had been moved or deteriorated and fallen down. In the past, a wooden board was affixed between the viewing platform at Glen Burney Falls and a tree to act as a barricade to keep visitors from leaving the left side of the platform and walking down to New Years Creek, but this board had been taken down prior to 9 August 2004. Only twelve days before Ms. Cobb's fall, a twenty-two-year-old man who was an experienced hiker and a twenty-four-year-old man who was an engineer slipped and fell in the same location; both were seriously injured. These men testified they did not realize how quickly and steeply the stream dropped down at this point.

After a trial, the jury found Ms. Cobb was not injured by the negligence of Defendant, and the trial court entered judgment dismissing Plaintiffs' complaint with prejudice. Plaintiffs filed a motion for a new trial pursuant to North Carolina Rule of Civil Procedure 59, which the trial court denied. On 14 April 2009, Plaintiffs filed written notice of appeal from the trial court's judgment and the denial of their motion for a new trial.

On appeal, Plaintiffs contend the trial court committed three errors pertaining to the jury instructions: (1) denying their requested jury instruction on a landowner's duty of care; (2) instructing the jury on a landowner's duty of care without addressing the import of Ms. Cobb's age; and (3) failing to provide the correct instructions in response to the jury's question regarding the consideration of age and the landowner's duty of care, thus misleading the jury and altering the outcome of the case. Plaintiffs also argue the trial court erred in denying their motion for a new trial.

## II. Jurisdiction

We have jurisdiction over Plaintiff's appeal of right. *See* N.C. Gen. Stat. § 7A-27(b) (2009) (stating appeal lies of right to this Court from final judgments of a superior court).

## III. Analysis

### A. Jury Instructions

[1] Plaintiffs argue the trial court erred in failing to give their requested jury instructions, which they contend were a correct statement of the law regarding a landowner's duty to a minor who is a lawful visitor. Defendant counters that the trial court's instructions to the jury were a correct statement of the applicable law.

> To prevail on this issue, the plaintiff must demonstrate that (1) the requested instruction was a correct statement of law and (2) was supported by the evidence, and that (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested and (4) such failure likely misled the jury.

*Liborio v. King*, 150 N.C. App. 531, 534, 564 S.E.2d 272, 274 (2002) (citation omitted). " 'When a party aptly tenders a written request for a specific instruction which is correct in itself and supported by evidence, the failure of the court to give the instruction, at least in substance, is error.' " *Maglione v. Aegis Family Health Ctrs.*, 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005) (quoting *Faeber v. E.C.T. Corp.*, 16 N.C. App. 429, 430, 192 S.E.2d 1, 2 (1972)). The appellant bears the burden of demonstrating the jury was misled or that the verdict was affected by an omitted instruction. *Robinson v. Seaboard Sys. R.R.*, 87 N.C. App. 512, 524, 361 S.E.2d 909, 917 (1987). Accordingly, we first look to see whether Plaintiffs' "requested instruction was a correct statement of law." *See Liborio*, 150 N.C. App. at 534, 564 S.E.2d at 274.

The trial court gave the jury the following instructions regarding the duty of a landowner to a lawful visitor:

> Issue Number 1; Was the minor plaintiff, Chelsea Cobb, injured by the negligence of the defendant? On this issue the burden of proof is on the plaintiff. This means that the plaintiff must prove, by the greater weight of the evidence, that the defendant was negligent and that such negligence was a proximate cause of the plaintiff's injury.

COBB v. TOWN OF BLOWING ROCK

[213 N.C. App. 88 (2011)]

Negligence refers to a person's failure to follow a duty of conduct imposed by law. The law requires every owner to use ordinary care to keep the premises in a reasonably safe condition for lawful visitors who use them in a reasonable and ordinary manner. Ordinary care means that degree of care which a reasonable and prudent person would use under the same or similar circumstances to protect himself and others from injury. A person's failure to use ordinary care is negligence.

. . . .

An owner is required to give adequate warning to lawful visitors of any hidden or concealed dangerous condition about which the owner knows or, in the exercise of ordinary care, should have known. A warning is adequate when, by placement, size and content, it would bring the existence of the dangerous condition to the attention of a reasonably prudent person. However, he does not have to warn about concealed conditions of which he has no knowledge and of which he could not have learned by reasonable inspection and supervision. He is held responsible for knowing of any condition which a reasonable inspection and supervision of the premises would reveal. He is also responsible for knowing of any hidden or concealed dangerous condition which his own conduct or that of his agents or employees has created . . . .

The owner is not required to warn of obvious dangers or conditions.

The instructions as given by the trial court were based upon portions of the pattern jury instructions. *See* N.C.P.I., Civ. 805.55 ("Duty of Owner to Lawful Visitor."). At trial, Plaintiffs requested that the following additions, indicated by italics, be added to the pattern jury instructions:

Negligence refers to a person or *entity's* failure to follow a duty of conduct imposed by law. The law requires every landowner to use ordinary care to keep the premises in a reasonably safe condition for lawful visitors who use them in a reasonable and ordinary manner. *What constitutes a reasonably safe condition of land depends upon the uses to which the owner invites the guests to make of the premises, and the uses which the owner should anticipate its guests will make of the premises. It also depends upon the known or reasonably foreseeable characteristics of the users of the premises. A landowner owes a higher level of care to a child who is unable to appreciate a potential of danger. In this context, ordinary care means that degree of care*

*which a reasonable and prudent person or entity would use under the same or similar circumstances to protect a child of the same or similar attributes as the plaintiff from injury. A person's failure to use ordinary care is negligence . . . .*

. . . .

*With respect to Plaintiff's first contention that Defendant failed to adequately warn of dangers associated with New Year's* [sic] *Creek,* an owner is required to give adequate warning to lawful visitors of any hidden or concealed dangerous condition about which the owner knows or, in the exercise of ordinary care, should have known. A warning is adequate when, by placement, size and content, it would bring the existence of the dangerous condition to the attention of a reasonably prudent *child of the same or similar attributes as the plaintiff.* (Citations omitted).

First, Plaintiffs contend the trial court erred in failing to give their proffered instructions. This argument fails, however, because those instructions contained an incorrect statement of law: the reference to a "higher level of care."

Our Supreme Court has held that, "[t]o state a claim for common law negligence, a plaintiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." *Stein v. Asheville City Bd. of Educ.,* 360 N.C. 321, 328, 626 S.E.2d 263, 267 (2006). " 'In the absence of a legal duty owed to the plaintiff by [the defendant], [the defendant] cannot be liable for negligence.' " *Id.* (alterations in original) (quoting *Cassell v. Collins,* 344 N.C. 160, 163, 472 S.E.2d 770, 772 (1996), *abrogated on other grounds by Nelson v. Freeland,* 349 N.C. 615, 507 S.E.2d 882 (1998)). Formerly, "the standard of care a real property owner or occupier owed to an entrant depended on whether the entrant was an invitee, licensee, or trespasser." *Lorinovich v. K Mart Corp.,* 134 N.C. App. 158, 161, 516 S.E.2d 643, 645 (1999). Landowners owed invitees "a duty of ordinary care to maintain the premises in a safe condition and to warn of hidden dangers that had been or could have been discovered by reasonable inspection." *Mazzacco v. Purcell,* 303 N.C. 493, 498, 279 S.E.2d 583, 587 (1981) (*abrogated on other grounds by Nelson,* 349 N.C. 615, 507 S.E.2d 882). However, a landowner owed a licensee merely the duty "to refrain from doing the licensee willful injury and from wantonly and recklessly exposing him to danger." *McCurry v. Wilson,* 90 N.C. App. 642, 645, 369 S.E.2d 389, 392 (1988) (quoting *Pafford v. Construction Co.,* 217 N.C. 730, 736, 9 S.E.2d 408, 412 (1940)) (quota-

tion marks omitted). Likewise, a landowner owed a trespasser a duty to refrain from the willful or wanton infliction of injury. *Howard v. Jackson*, 120 N.C. App. 243, 247, 461 S.E.2d 793, 797 (1995).

In *Nelson v. Freeland*, our Supreme Court eliminated "the distinction between licensees and invitees by requiring a standard of reasonable care toward all lawful visitors" and held that a landowner owes "the duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." 349 N.C. at 631–32, 507 S.E.2d at 892. In doing so, the Court explained it did "not hold that owners and occupiers of land are now insurers of their premises." *Id.* at 632, 507 S.E.2d at 892. The Court retained the status of trespasser because it concluded "abandoning the status of trespasser may place an unfair burden on a landowner who has no reason to expect a trespasser's presence." *Id.* at 632, 507 S.E.2d at 892. This Court has commented on the holding in *Nelson*, clarifying that

> the landowner now is required to exercise reasonable care to provide for the safety of all lawful visitors on his property, the same standard of care formerly required only to invitees. Whether the care provided is reasonable must be judged against the conduct of a reasonably prudent person under the circumstances.

*Lorinovich*, 134 N.C. App. at 161, 516 S.E.2d at 646. In other words, the present standard for all lawful visitors is the same as it was prior to Nelson for invitees. *See id. Nelson* thus abolished the distinction between "licensees" and "invitees" and applied the same standard to all lawful visitors. *Lorinovich*, 134 N.C. App. at 161, 516 S.E.2d at 646.

Our pre-*Nelson* decisions elevated the standard of care owed to licensee minors to the standard of care owed to invitees. Rather than owing licensee children a duty "to refrain from doing the licensee willful injury and from wantonly and recklessly exposing him to danger," *McCurry*, 90 N.C. App. at 645, 369 S.E.2d at 392 (quoting *Pafford*, 217 N.C. at 736, 9 S.E.2d at 412) (quotation marks omitted), landowners instead owed children-licensees a higher duty. After *Nelson, all* lawful visitors are entitled to the higher of the two previous standards. In other words, to the extent children-licensees were owed the duty of reasonable care before *Nelson* by virtue of their age, they are now owed that standard by virtue of being a lawful visitor. As the same standard now applies to all lawful visitors, there is no support for an instruction regarding a "higher standard of care" with respect to children. Therefore, the trial court correctly refused to give the specific instruction requested by Plaintiffs.

COBB v. TOWN OF BLOWING ROCK

[213 N.C. App. 88 (2011)]

[2] Plaintiffs also contend the trial court erred because the instruction given by the court failed to encompass the substance of the law. While a trial court is encouraged to make use of the pattern jury instructions, doing so "does not obviate the trial judge's duty to instruct [on] the law correctly." *State v. Jordan*, 140 N.C. App. 594, 596, 537 S.E.2d 843, 845 (2000). The trial court refused to instruct the jury on how to consider Ms. Cobb's age as part of the negligence analysis. Plaintiffs, citing *Hedrick v. Tigniere*, 267 N.C. 62, 147 S.E.2d 550 (1966), argue that a landowner's duty to warn is dependent upon the age of the lawful visitor.

In *Hedrick*, the plaintiff, a minor-invitee, was injured during her dancing lessons when she slipped and fell on the dance floor. *Id.* at 63–64, 147 S.E.2d at 551. The plaintiff brought a claim for negligence against the owners of the dance school, and the trial court entered a judgment of nonsuit at the close of evidence. *Id.* On appeal, our Supreme Court noted the applicable standard that a landowner owed to an invitee:

The proprietor of a school operated for profit, like the proprietor of any other business establishment, owes to those whom he invites to enter and use his premises, for purposes connected with his business, a duty to use ordinary care to maintain the premises in a condition reasonably safe for the contemplated use and a duty to warn the invitee against dangers, which are known to or should have been discovered by the proprietor and which are not readily apparent to such observation as may reasonably be expected of such an invitee to such an establishment.

*Id.* at 65–66, 147 S.E.2d at 553. The Court also noted that what constitutes reasonable care will vary depending upon the nature of the landowner's premises and the foreseeable characteristics of invitees:

What constitutes a reasonably safe condition of premises depends, of course, upon the uses which the proprietor invites his business guests to make of them and those which he should anticipate they will make. *It also depends upon the known or reasonably foreseeable characteristics of the invitees.* A condition reasonably safe for invitees upon an ice skating rink is far different from a condition reasonably safe upon the stairway of a rest home for the aged, or in the aisle between the counters and display racks of a store whose proprietor hopes his invitees' attention will be attracted to the articles there displayed for sale. The rule of law is stated in the same words for all these situa-

tions—the proprietor must use the care a reasonable man similarly situated would use to keep his premises in a condition safe for the foreseeable use by his invitee—but the standard varies from one type of establishment to another because different types of businesses and different types of activities involve different risks to the invitee and require different conditions and surroundings for their normal and proper conduct.

*Id.* at 67, 147 S.E.2d at 553–54 (emphasis added) (citations omitted). Here, Plaintiffs stress the *Hedrick Court* noted that the age of the invitee may be a factor in determining the landowner's standard of care:

[t]he sufficiency of a warning to the invitee of the existence of a condition upon the premises will depend, in part, upon whether the proprietor should know that the invitee, *by reason of youth, old age or disability*, is incapable of understanding the danger and of taking precautions for his or her own safety under such conditions. A warning sufficient to alert an adult professional dancer to the condition of a dance floor may not be sufficient to absolve the proprietor from liability to a 13 year old pupil for a fall thereon.

*Id.* at 66, 147 S.E.2d at 553 (emphasis added) (citations omitted). The Court reasoned that, in order to determine whether appropriate care has been exercised, "it is proper to consider the nature of the property, the uses and purposes for which the property in question is primarily intended, and the particular circumstances of the case." *Id.* at 67, 147 S.E.2d at 554 (citation omitted) (internal quotation marks omitted).

Though *Hedrick* was decided under the defunct invitee-licensee regime, the plaintiff in that case was an invitee, meaning she was entitled to the same standard of care as Ms. Cobb in this case. *See Lorinovich*, 134 N.C. App. at 161, 516 S.E.2d at 646 ("Thus the landowner now is required to exercise reasonable care to provide for the safety of all lawful visitors on his property, the same standard of care formerly required only to invitees."). Accordingly, in addition to being sound, *Hedrick's* rationale is highly persuasive. "Reasonably safe conditions" in a preschool would be different from those in a factory, bar, or other premises where youthful visitors would not reasonably be foreseeable. For example, the use of electrical socket covers might be reasonable in a nursery, but unreasonably burdensome in an electronics store. The same principle applies to natural conditions. It might be prudent to gate a public nature trail located adjacent to an elementary school to prevent wandering children, but that precaution

COBB v. TOWN OF BLOWING ROCK

[213 N.C. App. 88 (2011)]

might not be necessary if the trail is in a secluded area accessible only by motor vehicle.

Defendant argues *Hedrick* addressed a landowner's duty as to a minor-invitee injured by an artificial condition of the property, but because Ms. Cobb was injured by a natural condition of the land, the rule in *Hedrick* does not apply. In other words, Defendant asks us to endorse a bifurcated approach under which the foreseeable characteristics of lawful visitors are completely ignored when the visitor is injured by a natural condition, but accounted for when the visitor is injured by an artificial condition. When the Supreme Court rejected the trichotomy classification system in *Nelson*, it noted that one of the primary rationales behind keeping the trespasser-licensee-invitee trichotomy was the fear that plaintiff-friendly juries would impose unreasonable burdens on landowners. 349 N.C. at 624, 507 S.E.2d at 888. In rejecting this argument, the Court explained that "juries have properly applied negligence principles in all other areas of tort law, and there has been no indication that defendants in other areas have had unreasonable burdens placed upon them." *Id.* at 624–25, 507 S.E.2d at 888. We believe juries are equally capable of applying those principles here without unduly punishing landowners. Furthermore, the bright line approach has the potential to lead to illogical and unjust results.[3] Under these circumstances, *Nelson* eschews the use of mechanistic, bright line rules and encourages us to place the reasonableness of a landowner's conduct in the hands of the fact finder. *See id.* at 631, 507 S.E.2d at 892 ("[T]he trichotomy is unjust and unfair because it usurps the jury's function either by allowing the judge to dismiss or decide the case or by forcing the jury to apply mechanical rules instead of focusing upon the pertinent issue of whether the landowner acted reasonably under the circumstances.").

Defendant and *amicus curiae* have not directed us to any decisions stating that the foreseeable characteristics of an invitee (under the old regime) or a lawful visitor (under the current one) have no bearing on the issue of reasonableness when the plaintiff is injured by a natural, as opposed to an artificial, condition. Rather, they rely on several decisions involving the attractive nuisance doctrine. *See, e.g., Fitch v. Selwyn Vill.*, 234 N.C. 632, 635, 68 S.E.2d 255, 257 (1951). The attractive nuisance doctrine raises the standard of care owed to *trespassing* children relative to that owed to non-child trespassers. *See*

---

3. For example, the amount of a minor plaintiff's prospective settlement or the odds of that child prevailing at trial could hinge on whether the source of injury was natural or artificial, not on whether the defendant was actually negligent.

*Broadway v. Blythe Indus., Inc.*, 313 N.C. 150, 153–54, 326 S.E.2d 266, 269–70 (1985) (discussing the doctrine at length). It does so because children, due to their immaturity, have a natural propensity to touch, manipulate, explore, and climb dangerous things that pique their curiosity. *See id.* at 153, 326 S.E.2d at 269. Therefore, the doctrine generally applies when a defendant maintains a dangerous artificial condition likely to attract child trespassers. *See id.*

The doctrine is generally inapplicable, however, when trespassing children are injured by *natural* conditions. *See Fitch*, 234 N.C. at 635–36, 68 S.E.2d at 257–58 (stating the general rule that the doctrine applies when the defendant maintains artificial, but not natural, bodies of water). This distinction can be explained by the rationale behind the doctrine: by maintaining an artificial condition that is unusually attractive to small children, the landowner impliedly invites the children onto its premises. *See* Robert S. Driscoll, *The Law of Premises Liability in America: Its Past, Present, and Some Considerations for Its Future*, 82 Notre Dame L. Rev. 881, 904 (2006) (stating that the doctrine rests on the proposition that the landowner, " 'by maintaining the instrumentality, impliedly invites the child onto his land, and hence owes him a duty of due care under the circumstances' " (quoting Glenn Weissenberger et al., *The Law of Premises Liability* § 2.9, at 22 (3d ed. 2001))). When a child is a lawful visitor, the landowner either has invited the child onto the property or must accept responsibility for the child's presence for some other policy reason. To the extent attractive nuisance case law has *any* bearing on this case, which is doubtful, the rationale behind the doctrine suggests landowners must take account of lawful visitors' foreseeable characteristics.

Whether a natural condition is involved may inform the jury's determination of what is reasonable under the circumstances, but it provides no basis for forcing the jury to ignore the known or foreseeable characteristics of lawful visitors. We hold that, regardless of whether the plaintiff, who is a lawful visitor, is injured by an artificial or natural condition, the jury must be instructed to consider the known or reasonably foreseeable characteristics of lawful visitors when determining whether the defendant has discharged its duty to exercise reasonable care in maintaining its property for the protection of the plaintiff. Here, the trial court erred in failing to instruct accordingly.

## B. Plaintiffs' Motion for a New Trial

[3] Plaintiffs also argue that, because the trial court's jury instructions were faulty, the court also erred by failing to grant their Rule 59 motion for a new trial.[4] " 'Generally, a motion for new trial is addressed to the sound discretion of the trial court, and its ruling will not be disturbed absent a manifest abuse of that discretion.' " *Jackson v. Carland*, 192 N.C. App. 432, 444, 665 S.E.2d 553, 560 (2008) (quoting *Kinsey v. Spann*, 139 N.C. App. 370, 372, 533 S.E.2d 487, 490 (2000)). But where the motion hinges on a question of law or legal inference, we review the trial court's decision *de novo*. *Id.* at 444, 665 S.E.2d at 560–61. Here, Plaintiffs made a motion to the trial court for a new trial on the grounds that the trial court provided erroneous instructions to the jury.

We note the following exchanges between the trial court and the jury in the present case:

> The Court: You asked the question. When considering an obvious danger for lawful visitors, how is the age of the lawful visitor factored in? I have given you the law on this issue.
>
> You may now go back to the jury room to deliberate.
>
> Juror: Can you repeat the law?
>
> The Court: I gave it to you.
>
> Juror: You gave us the entire law related to Issue No. 1 [regarding negligence]?
>
> The Court: Yes sir, I told you all early on, remember. It is harder than you thought.

Thus, the issue addressed above—whether and how Ms. Cobb's age should be factored into the negligence calculus—confused the jury. In light of this confusion, we conclude it is likely that the jury was misled by the trial court's failure to instruct the jury on this point. Consequently, the instruction was erroneous, and the court's failure

---

4. In their complaint and in the "statement of the case" section of their brief on appeal, Plaintiffs state that Defendant has "waived governmental immunity by participating in the Interlocal Risk Financing Fund of North Carolina." In its answer, Defendant admitted that it participated "in the local risk financing fund administered by the North Carolina League of Municipalities." However, Defendant in the "statement of the case" section of its brief on appeal stated that it "has not waived sovereign immunity if applicable." As Defendant did not cross-appeal this issue regarding sovereign immunity and made no further argument in support of its contention on appeal, this issue is not properly before us. *See* N.C. R. App. P. 10(a).

to grant a new trial was error. *See Jackson*, 192 N.C. App. at 444, 665 S.E.2d at 560–61 (granting a new trial where the trial court provided an incorrect instruction pertaining to a question of law).

New Trial.

Judge McGEE concurs.

Judge STROUD concurs in part and dissents in part in a separate opinion.

STROUD, Judge, concurring in part and dissenting in part.

As noted by the majority opinion, plaintiffs contend on appeal that the trial court committed three errors in the jury instructions: (1) denying plaintiffs' requested jury instruction on a landowner's duty of care; (2) instructing the jury on a landowner's duty of care without addressing the import of plaintiff Chelsea's age; and (3) failing to provide the correct instructions in response to the jury's question regarding consideration of age and the landowner's duty of care, thus misleading the jury and altering the outcome of the case. The majority holds that the trial court did not err by denying plaintiffs' requested jury instruction on a landowner's duty of care, because the requested instruction "contained an incorrect statement of law: the reference to a 'higher level of care[,]' " and I concur with the majority as to this issue. The trial court properly refused to give the instructions as requested by plaintiffs. However, I dissent as to the remaining two issues, as I believe that the substance of the second and third issues is the same as the first, and that the instructions as given by the trial court were a correct and complete statement of the law. I would therefore affirm the trial court's judgment and denial of plaintiffs' motion for a new trial.

Although the majority holds that the jury instructions as requested by plaintiffs are incorrect because they refer to a "higher level of care" applicable to plaintiff Chelsea based upon her age, the majority then goes on, in addressing the second issue, to hold that the trial court should have instructed the jury as to a higher standard of care, specifically that "the jury must be instructed to consider the known or reasonably foreseeable characteristics of lawful visitors when determining whether the defendant has discharged its duty to exercise reasonable care in maintaining its property for the protection of the plaintiff." I believe that this instruction, in this case, would

give improper emphasis to the age of the plaintiff under existing case law and would create a "higher standard of care" in any case where a plaintiff has some sort of "characteristic" which may decrease that person's ability to look out for her own safety, be it her youth, physical disability, mental disability, or any other characteristic which might be "reasonably foreseeable." But our law already takes these factors into consideration in the determination of negligence in several ways.

First and foremost, a jury makes the determination of the standard of care required by a reasonable landowner by considering the totality of the circumstances of a particular case. These circumstances may include the location, the time of day, lighting conditions, type of facility, and even the foreseeable characteristics of lawful visitors. These are all factual determinations and evidence as to all of these factors is relevant in the determination of what is "reasonable." For example, our Supreme Court in *Pulley v. Rex Hospital*, 326 N.C. 701, 392 S.E.2d 380 (1990) reversed summary judgment for the defendant based on a genuine issue of material fact where the plaintiff tripped and fell on an irregularity in the sidewalk leading to the emergency room entrance, at night, with inadequate lighting. The Court noted that

> [v]iewed in sum, our prior cases merely establish that the facts must be viewed *in their totality* to determine if there are factors which make the existence of a defect in a sidewalk, in light of the surrounding conditions, a breach of the defendant's duty and less than "obvious" to the plaintiff. Such factors may include the nature of the defect in the sidewalk, the lighting at the time of the accident, and whether any other reasonably foreseeable conditions existed which might have distracted the attention of one walking on the sidewalk. *See Frendlich v. Vaughan's Foods*, 64 N.C. App. 332, 337, 307 S.E.2d 412, 415 (1983).

*Id.* at 706, 392 S.E.2d at 384. The Court also noted

> that a reasonable juror, in considering whether the defendant breached its duty to the plaintiff and whether the plaintiff was exercising ordinary care in watching where she was walking, might consider a fault in a sidewalk leading into a hospital emergency room quite differently from an identical fault in an ordinary city sidewalk. A reasonable juror could believe that people entering emergency rooms are frequently and foreseeably very distracted from their ordinary behavior.

*Id.* at 708, 392 S.E.2d at 385. Although the *Pulley* court was considering a motion for summary judgment, the applicable law is the same

for purposes of summary judgment and for jury instructions. I have no disagreement at all with the majority's reasoning that the "reasonably foreseeable characteristics" of lawful visitors are an important consideration in the jury's determination of reasonableness of a landowner's actions in maintaining a property in safe condition. But this is an *evidentiary* consideration and does not require a variation from the pattern jury instructions as given by the trial court. Although our Courts have addressed cases dealing with schools, day care centers, nursing homes, hospitals, and all sorts of locations where it is reasonably foreseeable that the lawful visitors to that location will have characteristics of age or impairment which may have an effect on the reasonable standard of care applicable to that facility, I have been unable to find a single North Carolina case which has included jury instructions as to negligence which focus upon the characteristics of visitors or characteristics of the property location. In certain cases, a higher standard of care may be imposed by a safety statute or regulation, *see Cooper v. Southern Pines*, 58 N.C. App. 170, 174, 293 S.E.2d 235, 237 (1982) (stating that N.C. Gen. Stat. § 160A-296 "create[s] an affirmative duty of care: A city shall have '[t]he duty to keep the public streets, sidewalks, alleys, and bridges . . . free from unnecessary obstructions.' "), and a jury is properly instructed according to that standard. But that is not the case here. In this case, evidence was presented as to all of these factors. At trial, plaintiff presented evidence of plaintiff Chelsea's age and inexperience, as opposed to the inability of even an experienced adult hiker to appreciate the risk presented by New Years Creek. There was evidence of defendant's past efforts to prevent people from leaving the platform, including the map sign and the wooden board affixed between the viewing platform and a tree, although defendant had allowed some of these safety precautions to deteriorate or be removed. There was evidence that shortly prior to plaintiff Chelsea's fall, two men were seriously injured in the same location, so that arguably defendant should have taken immediate action to prevent access to the creek or at the very least to post stern and specific warnings of the serious danger presented by the falls. The jury considered all of this evidence, as well as other evidence, in its totality, and made its determination using the pattern jury instructions as to negligence of a landowner which have been used by North Carolina's courts thousands of times. These jury instructions are a correct statement of the law.

Our law does provide for specific instructions as to standards of care and negligence to accommodate certain characteristics of those injured by negligence. In this case, plaintiff Chelsea's age was

addressed specifically by the instruction as to contributory negligence. The jury was instructed to take her age into account as she is not held to an adult standard:

> A child who is between seven and fourteen years of age is not required to exercise the same degree of care for the safety of others that is required of an adult. The law imposes a duty upon a child to exercise only that degree of care for the safety of others that a reasonably careful child of the same age, discretion, knowledge, experience and capacity ordinarily would exercise under the same or similar circumstances. The degree of care required varies with the child's age, discretion, knowledge, experience and capacity. A child's failure to exercise the required degree of care would be negligence[.]

Plaintiff Chelsea's age changed her own standard of care to look out for herself; it does not, in and of itself, change the defendant's standard of care toward reasonably foreseeable lawful visitors in general. In *Hoots v. Beeson*, 272 N.C. 644, 648-50, 159 S.E.2d 16, 1921 (1968), our Supreme Court examined many cases in which minor children of various ages were injured by the alleged negligence of tortfeasors. In *Hoots*, the issue was whether the correct jury instructions were given as to the contributory negligence of an 11 year old child. *Id.* at 645-46, 159 S.E.2d at 18. But in each case discussed, the child's age is relevant for purposes of the jury instructions only as to *contributory negligence*; I have found no North Carolina case regarding a jury instruction as to negligence which has specifically addressed the effect of the age of the persons who might foreseeably be injured by the tortfeasor's allegedly negligent act. Again, this is not to say that the characteristics of persons who might foreseeably be injured by a negligent act are not relevant; they are relevant to the jury's determination of what would constitute "reasonable care" in the particular circumstances as noted above. But including a specific instruction as to the "reasonably foreseeable characteristics" of the lawful visitor in this case places double emphasis on plaintiff Chelsea's age. She is presumed incapable of contributory negligence, and the majority also would require an instruction that the defendant must exercise a higher standard of care because it is "reasonably foreseeable" that children of age 12, as well as children of all ages from crawling babies on up may visit public recreational areas such as New Years Creek.

Plaintiffs relied heavily on *Hedrick v. Tignire*, 267 N.C. 62, 147 S.E.2d 550 (1966) as to its proposed jury instruction which the majority rejected as an incorrect statement of the law, but the majority also

COBB v. TOWN OF BLOWING ROCK

[213 N.C. App. 88 (2011)]

relies almost entirely upon *Hedrick* in creating its new rule that a jury must be instructed specifically on the "reasonably foreseeable characteristics" of the lawful visitor as part of the negligence instruction. I find *Hedrick* distinguishable. Plaintiffs, citing *Hedrick*, argue that a landowner's duty to warn is dependent upon the age of the lawful visitor. *Hedrick* is discussed in depth in the majority opinion and I will not repeat the details of the case. However, in *Hedrick*, the Court affirmed the trial court's judgment of non-suit, holding that there was no evidence that the defendant's actions in waxing the floor were the proximate cause of the plaintiff's injuries, the doctrine of *res ipsa loquitur* did not apply, and it was not negligent *per se* to wax and polish the dance floor. *Id.* at 67-68, 147 S.E.2d at 554.[5] I also note that no jury instructions were involved in *Hedrick*, as the case never made it that far. Yet plaintiffs argue, and the majority agrees, that the rule in *Hedrick* should be applied here to support a specific jury instruction as to consideration of plaintiff Chelsea's "reasonably foreseeable characteristics" in determining the standard of care. Defendant argues that *Hedrick* addressed a landowner's duty as to a minor invitee injured by an artificial condition of the property, but because plaintiff Chelsea was injured by a natural condition of the land, the rule in Hedrick is not applicable.

The cases, other than *Hedrick*, cited by plaintiffs in support of their argument as to the heightened standard of care as to minors[6] are no longer applicable after *Nelson v. Freeland*, 349 N.C. 615, 507

5. We note that in subsequent cases addressing the standard of care a landowner owes to a minor-invitee, who was injured by an artificial condition of the land, our Courts have not considered the invitee's age in defining the landowner's duty. *See Phillips v. Grand Union Co.*, 64 N.C. App. 373, 374-75, 307 S.E.2d 205, 206 (1983); *Mitchell v. K.W.D.S., Inc.*, 26 N.C. App. 409, 410, 412, 216 S.E.2d 408, 410-11, *cert. denied*, 288 N.C. 242, 217 S.E.2d 665 (1975); *Bray v. Great Atlantic & Pac. Tea Co.*, 3 N.C. App. 547, 549, 165 S.E.2d 346, 348 (1969). Even after *Nelson*, this Court has not applied an age-based duty based on *Hedrick* in cases that addressed the standard of care a land-owner owes to minor-lawful visitors. *See Thomas v. Weddle*, 167 N.C. App. 283, 605 S.E.2d 244 (2004); *Royal v. Armstrong*, 136 N.C. App. 465, 524 S.E.2d 600, *disc. rev. denied*, 351 N.C. 474, 543 S.E.2d 495 (2000)).

6. *See Yates v. J.W. Campbell Electric Corp.*, 95 N.C. App. 354, 359, 382 S.E.2d 860, 863 (1989) (holding that 'in North Carolina . . . a landowner's duty of care to a licensee is to refrain from willful or wanton negligence, and from doing any affirmative acts which result in increased danger to the licensee while he is on the premises" but 'a landowner owes a higher level of care to a young child who is unable to appreciate a potential danger even though he is a licensee."); *Anderson v. Butler*, 284 N.C. 723, 729, 202 S.E.2d 585, 589 (1974) (holding that '[i]f the owner, while the licensee is upon the premises exercising due care for his own safety, is actively negligent in the management of his property or business, as a result of which the licensee is subjected to increased danger, the owner will be liable for injuries sustained as a result of such

S.E.2d 882 (1998) because they address the increased duty for landowners as to minor-licensees, but the lesser status of licensee was eliminated by *Nelson*. *Id.* at 631-32, 507 S.E.2d at 892. The majority properly determines that since *Nelson*, only two standards of care exist, as to either a lawful visitor or a trespasser.

In contrast to *Hedrick*, this Court, in *Waltz v. Wake County Bd. of Educ.*, 104 N.C. App. 302, 409 S.E.2d 106 (1991), *disc. review denied*, 330 N.C. 618, 412 S.E.2d 96 (1992), addressed the plaintiffs' claim against a defendant board of education for injuries sustained by a minor-invitee as the result of an injury caused by a natural condition of the land. Although *Waltz* deals with a minor child injured by a natural condition of the land and is in this regard most similar to the case before us, the majority does not mention it. In *Waltz*, the plaintiffs filed a claim for negligence against the defendant school board for injuries sustained by the minor-plaintiff, an eight-year-old student in second grade, after he was injured by tripping on a tree-root in the school's playground. *Id.* at 302, 409 S.E.2d at 106. The trial court granted defendant's summary judgment motion, dismissing the plaintiffs' claim. *Id.* On appeal, this Court noted that "[a] student attending school is an invitee while on the property of that school." *Id.* at 304, 409 S.E.2d at 107 (citation omitted). The Court defined the defendant school board's duty:

> A landlord owes a duty to an invitee to use reasonable care to keep the premises safe and to warn of hidden dangers, but he is not an insurer of the invitee's safety. (Citations omitted.) . . . These rules apply to a public school or board of education just as they apply to any other landlord, if the board of education has waived the defense of sovereign immunity (as defendant has done in the present case) by purchasing a liability insurance policy. . . .

*Id.* (citation omitted). This Court went on to hold that the plaintiffs had failed to show that the defendant had breached its duty, explaining that

> "[r]ecovery has generally not been permitted for injuries suffered by children on school grounds as a result of common, permanent, or natural conditions existing thereon." 68 Am. Jur. 2d Schools

active or affirmative negligence[,]" but "a higher measure of care is required when a duty is owed to young children" because "common experience tells us that a child may be too young and immature to observe the care necessary to his own preservation, and therefore, when a person comes in contact with such a child, if its youth and immaturity are obvious, he is chargeable with knowledge of that fact and he cannot indulge the presumption that the child will do what is necessary to avoid an impending danger.")

§ 325 (1973). We do not go so far as to say that a school may never be liable for injury resulting from a natural condition. However, school officials simply cannot be expected to protect children from every natural condition they may encounter on a school yard or a playground. Falls and mishaps, though unfortunate, are a part of every schoolchild's life and are something that neither teachers nor parents can reasonably be expected to guarantee to prevent. Here, the school took reasonable steps to protect its students by placing sand underneath and around playground equipment. This did not serve to aggravate the natural condition of the roots. If anything, it served to mitigate it by cushioning the fall of students.

*Id.* at 304, 409 S.E.2d at 107-08. Although it was decided in the specific context of defining the duty a school board owed to the students attending its schools, *Waltz* is instructive because it addressed a defendant-landowner's duty to a minor-invitee injured by a natural condition of the land. In addition, *Waltz* addressed the duty of care owed by a public facility, a school, to young children. However, *Waltz* did not base its ruling as to the standard of care upon the age or other characteristics of the injured child, but noted that "[r]ecovery has generally not been permitted for injuries suffered by children on school grounds as a result of common, permanent, or natural conditions existing thereon." *Id.* at 304, 409 S.E.2d at 107. The *Waltz* decision regarding the duty owed to a minor-invitee was decided pre-*Nelson*, but as the majority noted "the present standard for all lawful visitors is the same as it was prior to *Nelson* for invitees." I recognize the difficulty of our current application of pre-*Nelson* cases, as *Nelson* abolished one aspect of premises liability law, the distinction between trespassers, licensees, and invitees, but kept the rest of the common law which had developed, including how standards of care may apply in different factual contexts. I have attempted to follow the precedents set by portions of the case law which were not changed by *Nelson*, and I believe that the majority has treated *Nelson* as abrogating portions of the common law which it did not. Thus I believe it is relevant that this case arises from an injury to a child from a common, permanent, natural condition of the land. I do not believe that this creates a "bifurcated approach" to the law of negligence as applied to natural versus manmade conditions, as noted by the majority, but simply recognizes the application of the general standard of "reasonable care" in different factual situations, in accord with our prior case law.

As noted above, in *Hedrick*, the minor-plaintiff alleged that her injuries were caused by the defendant's dance floor, an artificial condition. 267 N.C. at 63-64, 147 S.E.2d at 552. In contrast, plaintiff Chelsea was injured on defendant's property when she fell down in New Years Creek and went over Glen Burney Falls, which are permanent, natural conditions of defendant's land. Accordingly, I agree with defendant that the facts here are distinguishable from *Hedrick*. *Hedrick* sets forth the general rule applicable as to conditions which have been created by the landowner- artificial conditions- on the landowner's premises:

> The rule of law is stated in the same words for all these situations—the proprietor must use the care a reasonable man similarly situated would use to keep his premises in a condition safe for the foreseeable use by his invitee but the standard varies from one type of establishment to another because different types of businesses and different types of activities involve different risks to the invitee and require different conditions and surroundings for their normal and proper conduct.

267 N.C. at 67, 147 S.E.2d at 553-54.

Plaintiff goes too far one way in its arguments on the applicable standard of care, while defendant goes too far the other way. I believe the correct standard lies in the middle, and the trial court instructed the jury accordingly. Defendant argues that "when dealing with a natural condition that is open and obvious a landowner has no duty to take additional precautions for children using the property." However, the cases that defendant cites in support of its argument are in the context of the attractive nuisance doctrine. *See Leonard v. Lowes Home Centers, Inc.*, 131 N.C. App. 304, 506 S.E.2d 291 (1998), *disc. review denied*, 350 N.C. 97, 528 S.E.2d 364 (1999); *McCombs v. City of Asheboro*, 6 N.C. App. 234, 170 S.E.2d 169 (1969); *Fitch v. Selwyn Village, Inc.*, 234 N.C. 632, 68 S.E.2d 255 (1951). The attractive nuisance doctrine operates as "an exception to the general rule regarding the liability of landowners for injuries sustained on the premises *by trespassers*." *Lanier v. North Carolina State Highway Com.*, 31 N.C. App. 304, 310, 229 S.E.2d 321, 324 (1976) (emphasis added). Here, plaintiff Chelsea was not a trespasser; she was lawfully on defendant's property. Therefore, the cases cited by defendant in support of its argument that it owes no duty to take additional precautions in anticipation of minor lawful visitors as to natural conditions of the land are inapplicable. Other than *Waltz*, I find no relevant

North Carolina cases that address a landowner's duty to a minor-lawful visitor injured by a natural condition of the land. However, as the attractive nuisance cases cited by defendant do address a land-owner's duty to child-trespassers in the context of natural conditions of the land, I find them instructive in considering defendant's duty to a minor lawful-visitor who is injured by a natural condition on defendant's land.

In *Fitch*, the plaintiff's intestate, age two, lived with his parents in one of the defendant's apartments, which was located about 20 yards from Sugar Creek in Charlotte, North Carolina. 234 N.C. at 633, 68 S.E.2d at 256. The plaintiff's intestate wandered down to Sugar Creek and drowned. *Id.* The plaintiff brought a wrongful death action against the defendant apartment owner, alleging that

> there was no fence or other obstruction to prevent small children from falling or climbing down the creek banks to the open waters of Sugar Creek; that defendant knew, or by the exercise of reasonable care could have known, that the banks and waters of Sugar Creek, as it passed over the apartment properties, was a common resort of children and constituted a condition which was inherently dangerous to small children.

*Id.* The trial court sustained the defendant's demurrer, dismissing the plaintiff's claims, and the plaintiff appealed. *Id.* at 634, 68 S.E.2d at 256-57. On appeal, the Court reasoned that

> [i]t is a matter of common knowledge that streams of water are attractive to children, and that thousands of them flock to them during each year for the purpose of wading or swimming in their cool and refreshing waters, or to fish therein, notwithstanding the common dangers that may exist in such use of our natural streams.

*Id.* at 635, 68 S.E.2d at 257. The Court, in discussing a landowner's duty and the hazards which are inherent to a natural condition of the land, noted that

> [t]he owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. His liability bears a relation to the character of the thing, whether natural and common, or artificial and uncommon; to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing; and, in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions. As to

common dangers, existing in the order of nature, it is the duty of parents to guard and warn their children, and, failing to do so, they should not expect to hold others responsible for their own want of care. But, with respect to dangers specially created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded and rendered safe, the rule is, as it ought to be, different; and such is the rule of the turntable cases, of the lumber pile cases, and others of a similar character.

If it should be conceded that a branch or creek is inherently dangerous to children of tender years, it must also be conceded that such streams cannot be easily guarded and rendered safe. A street is ordinarily an unsafe place for a child of tender years to play, but the location of a house near a street does not impose upon the landlord any obligation to protect the children of his tenant from injury caused by playing in such street. Streets, like streams, cannot be easily guarded and rendered inaccessible to children.

*Id.* at 635-36, 68 S.E.2d at 257-58. (citations and quotation marks omitted). The Court went on to hold that "the plaintiff's complaint do[es] not make out a cause of action for actionable negligence against the defendant" and affirmed the trial court's dismissal of the plaintiff's complaint. *Id.* at 636, 68 S.E.2d at 258.

In *Leonard*, the minor plaintiff, age nine, "was seriously injured when she rode her bicycle down a dirt pathway on a steep slope from defendant's property into the street and collided with a car." 131 N.C. App. at 305, 506 S.E.2d at 292. The steep slope was "located partially upon defendant's property, and was created when defendant graded its property for development as a store site in 1986." *Id.* The minor-plaintiff and her mother brought a claim on behalf of the minor-plaintiff alleging that "the pathway on the steep slope is a dangerous condition subjecting defendant landowner to liability under the doctrine of attractive nuisance." *Id.* At trial, a jury found the defendant negligent but also found the minor plaintiff to be contributorily negligent. *Id.* A judgment was entered dismissing the plaintiffs' complaint with prejudice, and the plaintiff appealed. *Id.* On appeal, this Court reasoned that,

[a] danger which is not only obvious but natural, considering the instrumentality from which it arises, is not within the meaning of the attractive nuisance doctrine, for the reason that an owner or occupant is entitled to assume that the parents or guardians of a

child will have warned him to avoid such a peril . . . . [B]odies of water and streets have generally been considered so natural, pervasive and obvious a danger, that landowners cannot be expected to protect young children from the dangers despite their allurement to children of tender years. *Hedgepath v. City of Durham*, 223 N.C. 822, 823, 28 S.E.2d 503, 504-05 (1944)[.]

*Id.* at 307-08, 506 S.E.2d at 293-94. The Court went on to hold that the downhill path was "a natural and obvious condition, creating no legal duty upon defendant to take precautions against harm to young children[,]" and affirmed the dismissal of the plaintiff's complaint. *Id.* at 309-10, 506 S.E.2d at 294-95.[7]

Our courts have previously noted the burden of making natural features of the land safe, especially bodies of water, is particularly high. "[S]treams[] cannot be easily guarded and rendered inaccessible to children." *Fitch*, 234 N.C. at 636, 68 S.E.2d at 258. I therefore disagree with the majority that there is no distinction in the caselaw as the application of the standard of "reasonable care" to artificial conditions as opposed to natural conditions of the land, and I would rely upon the case which has addressed natural conditions, *Waltz*.

The status of the minor-plaintiff as a lawful visitor and not a trespasser does not alter the hazards which are inherent to natural conditions, such as streams, waterfalls, or rivers, nor does her status minimize the difficulty in guarding and rendering such conditions safe, as noted by our Courts in *Fitch* and *Leonard*. Defendants do have a duty "to use ordinary care to keep the premises in a reasonably safe condition for lawful visitors who use them in a reasonable and ordinary manner." *See* N.C.P.I.-Civ. 805.55 (2008). Because the ages of lawful minor visitors may vary from crawling babies to teenagers, the practical result of a "characteristic"-based jury instruction on the standard of care would be to require landowners to "babyproof" every inch of potentially dangerous natural features of land, including rivers, streams, and, for that matter, the shorelines of North Carolina's sounds and the Atlantic Ocean. As the majority opinion adopts the broad language of the "reasonably foreseeable characteristics" of the lawful visitor, the instruction as approved could require

---

7. *McCombs v. City of Asheboro*, 6 N.C. App. 234, 170 S.E.2d 169 (1969), the second case cited by defendant in support of its argument, is not helpful to the analysis of a landowner's duty as to natural conditions, as it addressed the defendant's duty and the application of the attractive nuisance doctrine in the context of an injury caused by a manmade artificial condition—a ditch excavated by the defendant for placement of a sewer line.

**COBB v. TOWN OF BLOWING ROCK**

[213 N.C. App. 88 (2011)]

a landowner to attempt to make every inch of its property—since people do tend to wander off of marked trails—even natural conditions on the land, safe for every "foreseeable" lawful visitor despite his age or disabilities.[8]

Plaintiffs argue that their "requested instruction incorporates North Carolina jurisprudence concerning the negligence of minors between seven and fourteen years old" for purposes of contributory negligence of a minor. *See Hedrick*, 267 N.C. at 65, 147 S.E.2d at 552 ("The plaintiff, being only 13 years of age at the time of her fall, is presumed to have been incapable of contributory negligence. *Hutchens v. Southard*, 254 N.C. 428, 119 S.E.2d 205 [(1961)]; *Adams v. State Board of Education*, 248 N.C. 506, 103 S.E.2d 854 [(1958)]. Though this presumption is rebuttable, the burden of rebutting it is upon the defendants."). Essentially, plaintiffs argue that both the standard of care owned by the landowner and the standard of care of the lawful visitor to watch out for her own safety should vary based upon the characteristics of the visitor. Neither plaintiffs nor the majority opinion have cited any cases which would support the proposition that the jury instructions as to both the duty of the landowner and the standard for contributory negligence should be based upon the age of the lawful visitor. The age of the minor lawful visitor is taken into consideration as to the issue of contributory negligence, *see Welch v. Jenkins*, 271 N.C. 138, 142, 155 S.E.2d 763, 766-67 (1967), and the jury here was instructed as to the presumption that a child of plaintiff Chelsea's age is presumed to be incapable of contributory negligence. I find no support in the prior cases for plaintiffs' argument that the same standards used as to children for purposes of

---

8. I also note that N.C.P.I. 805.69 (2008), CITY OR COUNTY NEGLIGENCE —DEFENSE OF CONTRIBUTORY NEGLIGENCE—HANDICAPPED PLAINTIFF, addresses contributory negligence as to a handicapped person. "A person traveling on a [street] [sidewalk] [alley] [bridge] [public way] has a duty to use ordinary care to protect *himself* from [injury] [damage]. *He* must use *his* senses to dis-cover and to avoid such dangerous conditions as would be discovered and avoided by a reasonable person exercising ordinary care for *his* own safety under the same or similar circumstances. If one or more of a person's senses is impaired because of blindness, deafness, or some other handicap, the law requires *him* to take more care and use more vigilant caution for his own safety on public ways in order to compensate for his handicap. Thus, in order to exercise ordinary care for *his* own safety, a person who is [blind] [deaf] [(name other handicap)] must exercise that degree of care which a reasonable person with the same or similar handicap would exercise under the same or similar circumstances." (footnotes omitted). I note that there is no pattern jury instruction stating that the standard of care owed by the city or county is higher based upon the fact that the particular plaintiff is handicapped in some manner which made it more difficult for the plaintiff to perceive or respond to hazards.

contributory negligence should be applied to determine the standard of care owed by the landowner.

Here, defendant had opened up the land on which Glen Burney Falls and New Years Creek were located to the public and had a reason to expect visitors of all ages would explore the property. Therefore, rather than hold that landowners owe no duty to take additional precautions for minor lawful-visitors as to natural conditions of the land, as defendant argues, or, as in *Fitch,* 234 N.C. at 635-36, 68 S.E.2d at 257-58, shift that duty entirely to the minor's parents, I would hold that for permanent, naturally occurring conditions, such as the stream and waterfall in question, landowners owe lawful visitors, including minors, the same duty established in *Nelson,* 349 N.C. at 631-32, 507 S.E.2d at 892: "the duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." In addition, the landowner has a duty to give adequate warning to lawful visitors of "any hidden or concealed dangerous condition about which the owner knows or, in the exercise of ordinary care should have known." *James v. Wal-Mart Stores, Inc.,* 141 N.C. App. 721, 724, 543 S.E.2d 158, 160 (Edmunds, J., dissenting), *reversed per curiam,* 354 N.C. 210, 552 S.E.2d 140 (2001) (adopting J. Edmunds dissent). As defendant had opened up a portion of New Years Creek, Glen Burney Falls, and the surrounding property to the public and had made trails and built observation platforms to view the waterfalls, it owed its lawful visitors the duty to exercise reasonable care in the maintenance of the premises and to warn visitors of hidden or concealed dangers of which it was aware or should have been aware. Certainly these visitors might include both adults and children of all ages, but it is the jury's role to determine if the defendant's actions or omissions were consistent with the duty of "reasonable care" owed to all lawful visitors. Based upon the evidence presented and the jury instructions as given, the jury could have found that defendant failed to exercise reasonable care and that defendant was negligent in maintaining the premises or in failing to provide sufficient warning of the danger posed by Glen Burney Falls, but it did not. Because the jury instructions were correct, I believe that the jury's verdict should stand. As plaintiffs' requested instruction that "[a] landowner owes a higher level of care to a child who is unable to appreciate a potential of danger[,]" was not a correct statement of the law, *Liborio v. King,* 150 N.C. App. 531, 534, 564 S.E.2d 272, 274 (2002), plaintiffs failed to carry their burden, *Robinson v. Seaboard Sys. R.R., Inc.,* 87 N.C. App. 512, 524, 361 S.E.2d 909, 917 (1987), and I would find also that the

**COBB v. TOWN OF BLOWING ROCK**

[213 N.C. App. 88 (2011)]

pattern jury instruction as used by the trial court correctly and completely instructed the jury as to the applicable law. I also dissent as to the majority's holding that the trial court should have granted plaintiffs' motion for a new trial. Plaintiffs' only argument regarding their motion for a new trial is that "the trial court erred as a matter of law in the jury instructions. Therefore, Plaintiffs' Rule 59 motion should have been granted and a new trial awarded." Since I would hold that the trial court properly instructed the jury on the legal duty of a landowner as to a minor-lawful visitor injured on its premises, I would affirm the trial court's denial of plaintiffs' motion for a new trial.

The majority notes the jury's question "how is the age of the lawful visitor factored in?" and finds that the jury was "confused." The trial court had instructed the jury properly as to the determination of defendant's negligence and instructed the jury on the presumption that plaintiff Chelsea was incapable of contributory negligence because of her age—this is how the age of the lawful visitor factors in. The trial court was also right when it responded to the jury's question and told the jury, "It is harder than you thought." This is a hard case. It may seem to be a hardship upon the party injured to be without a remedy; however, this Court is admonished "not to be influenced . . . by any motions of hardships[,]" and to "look at hardships in the face rather than break down the rules of law[,]" as hard cases can be "apt to introduce bad law." *In re McDonald's Will*, 219 N.C. 209, 211, 13 S.E.2d 239, 240 (1941).

I would find no error in the trial court's instructions to the jury in regard to defendant's duty and affirm the trial court's denial of plaintiffs' motion for a new trial. I therefore respectfully concur in part and dissents in part.